<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ELIZABETH K.,[1] | |
| Plaintiff, | No. 25cv10296 (EP) |
| v. | **OPINION** |
| FRANK BISIGNANO,[2] COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**PADIN, District Judge.**

Plaintiff Elizabeth K., who suffers from multiple physical impairments, appeals the Social

Security Administration's ("SSA") denial of disability insurance benefits ("DIB") pursuant to the

Social Security Act (the "Act").[3]  D.E. 1 ("Complaint").  For the reasons explained below, the

Court will **GRANT** the appeal, **VACATE** the denial, and **REMAND** for further proceedings

consistent with this Opinion.[4]

---

[1] To protect the privacy interests of plaintiffs in social security cases, the Court adopts the recommendation of the Judicial Conference of the United States to refer to plaintiffs in social security cases by their first name and last initial.  *Veronica D. v. Comm'r of Soc. Sec.*, No. 24-1326, 2025 WL 2665313, at *8 (M.D. Pa. Sept. 17, 2025).

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).  *See* Fed. R. Civ. P. 25(d).

[3] 42 U.S.C. §§ 401-434.

[4] The Court decides the appeal without oral argument.  Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

## I.    BACKGROUND

### A.    Plaintiff's DIB Application

Plaintiff initially filed a protective DIB application on February 24, 2022, alleging disability beginning January 1, 2022.  *See* D.E. 4 ("Administrative Record" or "R.") 224-27.  The SSA initially denied the application on May 14, 2022, *id.* 113-17, and again upon reconsideration on November 8, 2022, *id.* 125-35.  After Plaintiff requested a hearing, *id.* 155-73, Administrative Law Judge Ellen P. Bush (herein, the "ALJ") conducted a hearing on January 10, 2024 (herein, the "Hearing"), *id.* 201.  Following the Hearing, on August 2, 2024, the ALJ denied Plaintiff's application.  *Id.* 14-36.

Plaintiff then filed an appeal to the Appeals Council on August 5, 2024, *id.* 219-20, and on May 1, 2025, the Appeals Council concluded that there were no grounds for review, *id.* 1-6.

### B.    The ALJ's Five-Step Sequential Evaluation Process

To qualify for DIB, a claimant must show that she is disabled within the meaning of the Act.  42 U.S.C. § 423(a)(1)(E).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  *Id.* § 423(d)(1)(A); *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001).  The individual's physical or mental impairment, furthermore, must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  *Id.*

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2022, her alleged disability onset date. R. 20.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

Here, the ALJ determined that Plaintiff has the following severe impairments: (1) chronic pain syndrome; (2) degenerative disc disease (cervical and lumbar); (3) anxiety disorder; and (4) depressive disorder. R. 20. In addition, the ALJ determined that Plaintiff had several non-severe medical impairments: (1) rheumatoid arthritis; (2) carpal tunnel syndrome; (3) anemia and vitamin D deficiency; (4) diabetes; (5) obesity and hypertension with vascular changes in both eyes; (6) bilateral cataracts with "stable" vitreal floaters in both eyes reducing corrected visual acuity to 20/30+ in both eyes; and (7) post-traumatic stress disorder ("PTSD"). D.E. 9 ("Brief" or "Br.") at 15-16 (citing R. 20-22).

At step three, the ALJ decides whether the plaintiff's impairments meet or equal the severity of an impairment in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1.[5] 20 C.F.R. § 404.1520(d).  If so, the plaintiff is presumed to be disabled if the impairments have lasted or are expected to last for a continuous period of at least twelve months.  *Id.* § 404.1509. Otherwise, the ALJ proceeds to step four.

Despite recognizing at step two that Plaintiff had multiple severe impairments and several non-severe impairments, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the Listings.  R. 22-23.

At step four, the ALJ must then determine the plaintiff's residual functional capacity ("RFC") and whether the plaintiff can perform past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step five.

Here, the ALJ found that Plaintiff had the RFC to:

> perform light work as defined in 20 C.F.R. [§] 404.1567(b) except that she can occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead with the right upper extremity (non-dominant); can understand and remember and maintain attention and focus to complete simple tasks; adapt to infrequent changes to task; and work in the vicinity of the general public but without a requirement for direct interaction.

R. 23-24; *see id.* 24-30 (full explanation of the ALJ's decision).  The ALJ also found that Plaintiff has no past relevant work.  *Id.* 30.

Finally, at step five, the ALJ must decide whether the plaintiff—considering the plaintiff's RFC, age, education, and work experience—can perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).  The ALJ determined that Plaintiff could perform the jobs of:  (1) cleaner/housekeeper (DOT 323.687-014), a light, SVP-2 unskilled

---

[5] A "Listing" refers to an impairment on the Listing of Impairments.

occupation with 175,000 jobs nationally; (2) routing clerk (DOT 222.687-022), a light, SVP-2 unskilled occupation with 123,000 jobs nationally; and (3) marker (DOT 209.587-034), a light, SVP-2 unskilled occupation with 165,000 jobs in the nation.  R. 31.

### C.    Plaintiff's Appeal

Plaintiff appealed the ALJ's decision to the SSA Appeals Council, which denied review on May 1, 2025.  R. 1-6.  Plaintiff then commenced this action on June 12, 2025.  *See* Dkt.  Defendant filed the Administrative Record on August 12, 2025.  *See id.*

After multiple extensions, Plaintiff filed her brief.  Br.  Defendant then opposed, D.E. 15 ("Opposition" or "Opp'n"), and Plaintiff replied, D.E. 16 ("Reply").

## II.    LEGAL STANDARD

Judicial review of an SSA determination is based upon the pleadings and the transcript of the record.  The scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the ALJ's findings of fact.  *See* 42 U.S.C. § 405(g) ("The findings . . . as to any fact, *if supported by substantial evidence*, shall be conclusive.") (emphasis added); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (holding that a district court has plenary review of all legal issues and reviews the ALJ's findings to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).  However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence."  *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

If faced with conflicting evidence in the record, the Commissioner "must adequately explain . . . his reason for rejecting or discrediting competent evidence." *Kirby v. Comm'r of Soc. Sec.*, No. 16-5159, 2017 WL 4330361, at *5 (D.N.J. Sept. 29, 2017) (citations omitted). The Court must determine "whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision." *Dunster v. Dudek*, No. 24-469, 2025 WL 622333, at *4 (M.D. Pa. Feb. 26, 2025) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)). An ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions with conclusory findings or which indicate the ALJ failed to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. And the Court must also ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

## III.    DISCUSSION

The core of Plaintiff's appeal rests on "a single argument with a number of 'moving parts'"—that "the decisional RFC, upon which the denial was based, is not supported by substantial evidence." Reply at 1 (emphasis removed). In particular, Plaintiff argues that the ALJ's findings at step four were compounded by the errors she made at step two—namely, finding several of Plaintiff's medical impairments to be non-severe, and then not explaining how those non-severe impairments affected Plaintiff's RFC. Br. at 18-19. Based on these errors, Plaintiff asks the Court to reverse the ALJ's decision and remand solely to calculate benefits, or alternatively, to remand "for reconsideration of the severe impairments, the RFC and the pain evaluation." Reply at 4.

For the reasons that follow, the Court agrees with Plaintiff that the ALJ erred at step four by failing to articulate whether or how she considered Plaintiff's non-severe medical impairments when crafting Plaintiff's RFC. The Court also finds that the ALJ erred at step two by classifying several of Plaintiff's medical impairments as non-severe. Therefore, the Court will **GRANT** Plaintiff's appeal and **VACATE** the denial. However, the Court disagrees with Plaintiff that a reversal solely for the calculation of benefits is appropriate, and therefore, will **REMAND** for further proceedings consistent with this Opinion.

### A.     The ALJ Erred at Step Two

The Court begins by acknowledging that Plaintiff focuses her appeal on the ALJ's failures at step four of the sequential process, and only implicitly argues that the ALJ erred at step two when she found several of Plaintiff's medical impairments to be non-severe. Plaintiff correctly recognizes that a step two error is generally considered harmless as long as the ALJ finds at least one of the plaintiff's other impairments to be severe, which the ALJ did here. Br. at 17; *see Taylor v. Comm'r of Soc. Sec.*, No. 16-5033, 2018 WL 2298358, at *8 (D.N.J. May 21, 2018) ("An ALJ's failure to consider the severity of an impairment or an ALJ's determination that an impairment is non-severe is not ordinarily dispositive at [s]tep [t]wo if the ALJ has found at least one severe impairment. This is because the ALJ is required to consider the combined effects of all impairments—regardless of severity—at Steps Three through Five.") (citations omitted). Thus, Plaintiff rightly hones in on the ALJ's failure to meaningfully consider her non-severe medical impairments at step four.

Nevertheless, "[a]n appeal from a denial of Social Security and Disability benefits is quite unlike ordinary litigation." *Bryan P. v. Comm'r of Soc. Sec.*, No. 22-5496, 2023 WL 7151223, at *6 (D.N.J. Oct. 31, 2023). Recognizing that "Social Security proceedings are inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), "[d]istrict courts regularly interpret

7

*Sims* to allow for *sua sponte* review of issues not raised by the parties in the SSA context," *Bryan P.*, 2023 WL 7151223, at *6 (collecting cases). For example, one court remanded a Social Security action where it found the ALJ erred at step two even though the plaintiff did not raise that issue. *Denise L.T. v. Soc. Sec. Comm'r*, No. 21-0902, 2022 WL 4591784, at *3 n.3 (N.D. Cal. Sept. 29, 2022). There, the court explained that "the failure by [p]laintiff or her counsel to raise an error is not an acceptable reason for a court to actively ignore it," and that "the court can, and should, raise and address [such] issues *sua sponte* because the court has an independent duty to determine whether the ALJ's findings (in every regard) are supported by substantial evidence – and to take any consequentially necessary actions." *Id.* (citing *Sims*, 530 U.S. at 110).

In line with these cases, the Court will review the ALJ's step two determinations and fulfill its duty to determine whether the ALJ's findings are supported by substantial evidence. And, having considered the Administrative Record and the parties' briefs, the Court concludes that several of the ALJ's step two findings are not supported by substantial evidence.

"The threshold for deeming an impairment 'severe' at [s]tep [t]wo is quite low. To demonstrate a 'severe' impairment, an applicant need only show something more than a slight abnormality or a combination of slight abnormalities which cause 'more than minimal functional limitations.'" *Glass v. Comm'r of Soc. Sec.*, No. 18-15279, 2019 WL 5617508, at *7 (D.N.J. Oct. 31, 2019) (citing *Luna v. Comm'r of Soc. Sec.*, No. 14-6953, 2016 WL 3763339, at *4 (D.N.J. July 13, 2016)). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). The Third Circuit in *Newell* went on to explain that:

8

Only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits at step two. *See* [*Bowen v. Yuckert*, 482 U.S. 137, 158 (O'Connor, J., concurring)]. If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. *See* [*Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)]. Reasonable doubts on severity are to be resolved in favor of the claimant.

*Id.* at 546. The Third Circuit has "reaffirmed the severity standard announced in *Newell* and added that, in light of the low threshold for severity, findings that an impairment is not severe 'should be reviewed with close scrutiny' and are 'certain to raise a judicial eyebrow.'" *Neider v. Comm'r of Soc. Sec.*, No. 19-21080, 2020 WL 7693997, at *2 (D.N.J. Dec. 28, 2020) (quoting *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360-61 (3d Cir. 2004)). At bottom, "any doubt as to whether this showing has been made is to be resolved in favor of the applicant." *McCrea*, 370 F.3d at 360 (citing *Newell*, 347 F.3d at 546-47).

The ALJ's findings at step two raise a judicial eyebrow. The Court specifically finds error in the ALJ's findings that Plaintiff's rheumatoid arthritis and carpal tunnel syndrome are not severe impairments that meet the *de minimis* standard for severity. As Plaintiff highlights in her Brief— and as the ALJ herself recognized—Plaintiff receives infusions every six weeks to slow down the progression of her rheumatoid arthritis. Br. at 15 (citing R. 21). While Plaintiff testified that the infusions help mitigate her symptoms, there is no evidence in the Record that they take away all the pain. R. 59. Plaintiff also testified that her pain returns in full two weeks before her next scheduled infusion, at which point, she is prescribed steroid medication because she is in severe pain again. *Id.* In connection with her rheumatoid arthritis, Plaintiff also receives a series of injections for the localized treatment of bilateral trigger thumbs.[6] *Id.* 21.

---

[6] Trigger thumb is a condition that occurs when the thumb swells. Br. at 15 n.3. It "causes pain, stiffness, and a catching or locking sensation when bending or straightening the thumb." *Id.* People with conditions like diabetes and rheumatoid arthritis are at a higher risk. *See id.*

At the Hearing, Plaintiff testified that she has rheumatoid arthritis "everywhere," including her hands, wrists, shoulders, back, knees, ankles, and feet. R. 71. Plaintiff's rheumatoid arthritis impacts her in numerous ways: (1) it limits her ability to stand for at most 15 or 20 minutes, *id.*; (2) when she stands for prolonged periods of time, she feels extreme pain in her lower back, hips, and knees, *id.* 71-72; (3) at points, the pain in her shoulder is so extreme Plaintiff is "stuck in [her] clothes for two or three days" because she cannot change out of them, *id.* 69; and (4) she frequently drops things, such as a gallon of water, out of her hands, *id.* 73. Plaintiff's testimony is supported by the opinion of Dr. Inderbir Johal, MD, Plaintiff's pain management provider, who opined that Plaintiff must avoid heavy lifting, carrying, excessive bending, and prolonged sitting and standing. *Id.* 28-29 (citing *id.* 868). Notably, the ALJ found Dr. Johal's opinion "mostly persuasive," as his opinion was "supported by [Plaintiff]'s performance during multiple physical exams in his office," and "largely consistent with primary care records." *Id.* 29.

There is no dispute that Plaintiff would be unavailable for work "during her monthly 'flareups' as well as during the days of her . . . infusion therapy." Br. at 17-18. And, based on Plaintiff's testimony and Dr. Johal's opinion, it appears that Plaintiff's infusion therapy is *not* effectively controlling her rheumatoid arthritis. *See Glass*, 2019 WL 5617508, at *7 ("[A]n impairment may be deemed non-severe where its effects can be effectively controlled through treatment or medication."). Considering that "[c]ourts must resolve any doubt as to whether this showing has been made in favor of the claimant," *Josefa D. v. Kijakazi*, No. 20-16822, 2023 WL 4882862, at *4 (D.N.J. Aug. 1, 2023) (citations omitted), the Court finds the ALJ's determination that Plaintiff's rheumatoid arthritis is not a severe impairment is not supported by substantial evidence.

The same is true for the ALJ's determination that Plaintiff's carpal tunnel syndrome, which is caused by Plaintiff's rheumatoid arthritis, *see* Br. at 15 n.3 & 18—and which the ALJ recognized was exhibited by positive Phalen's[7] and Tinel's[8] signs—is also not a severe impairment. Here, the ALJ based her decision that Plaintiff's carpal tunnel and trigger thumb impairments are not severe on the fact that Plaintiff's subsequent examinations do not describe reduced grip strength or decreased sensation. R. 21. But as Plaintiff notes, the ALJ has impermissibly translated the "non-report" of continued reduced grip strength to mean either that Plaintiff's carpal tunnel is not a severe impairment or that Plaintiff's symptoms have improved. Br. at 18. As explained above, Plaintiff testified that she drops things from her hands all the time—undoubtedly, and in the absence of evidence suggesting otherwise—Plaintiff's carpal tunnel and trigger thumb symptoms continue to have more than a *de minimis* effect on her ability to work.

In sum, the Court finds that several of the ALJ's determinations at step two of the sequential process were not supported by substantial evidence. And for the reasons explained *infra*, the Court cannot conclude that such errors were harmless.[9]

**B.      The ALJ Erred at Step Four**

At step four, the ALJ must craft Plaintiff's RFC. Pursuant to 20 C.F.R. § 416.945(a)(2), the ALJ must "consider all" of the claimant's impairments, including those "that are not 'severe.'"

---

[7] "Phalen's sign is a clinical test used to help diagnose carpal tunnel syndrome by reproducing the symptoms of numbness and tingling in the median nerve distribution." Br. at 16 n.4 (citation omitted).

[8] "Tinel's sign is a clinical test for nerve irritation or compression, which is considered positive if tapping on a nerve causes a tingling or 'pins and needles' sensation in the area of the nerve's distribution. It can indicate conditions like carpal tunnel syndrome, cubital tunnel syndrome, or other nerve entrapments or injuries." Br. at 16 n.5 (citation omitted).

[9] On remand, the ALJ should reconsider each of Plaintiff's non-severe medical impairments and whether they meet the *de minimis* threshold outlined *supra*.

11

*K.P. v. Comm'r of Soc. Sec.*, No. 20-2831, 2021 WL 3130879, at \*4 (D.N.J. July 23, 2021). Social Security Ruling 96-8p explains:

> [w]hile a "non severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at \*5. Put simply, "even if the ALJ properly determines that a claimant's impairments are non-severe [at step two] . . . a finding of non-severity does not eliminate those impairments from consideration of his or her overall ability to perform past work." *Scott S. v. Comm'r of Soc. Sec.*, No. 21-12732, 2024 WL 3665803, at \*4-5 (D.N.J. Aug. 6, 2024) (quoting *Marsella v. Comm'r of Soc. Sec.*, No. 18-2294, 2019 WL 912141, at \*9 (D.N.J. Feb. 25, 2019)).

As noted *supra*, the ALJ determined that Plaintiff had the following four severe impairments: (1) chronic pain syndrome; (2) degenerative disc disease (cervical and lumbar); (3) anxiety disorder; and (4) depressive disorder, R. 20, as well as the following seven non-severe impairments: (1) rheumatoid arthritis; (2) carpal tunnel syndrome; (3) anemia and vitamin D deficiency; (4) diabetes; (5) obesity and hypertension; (6) bilateral cataracts; and (7) post-traumatic stress disorder, *id.* 20-22. At step two, the ALJ explained why she found that these medical impairments were not severe. She then made the following statement regarding their impact on Plaintiff's RFC:

> I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

R. 22.   Plaintiff argues that the ALJ's acutal consideration of these impairments is absent from the decision, and therefore, her decision is not supported by substantial evidence.  Br. at 21.

The Court agrees.  "Although an ALJ is not required 'to use particular language or adhere to a particular format in conducting [the] analysis,' the decision must contain 'sufficient development of the record and explanation of findings to permit meaningful review.'"  *Lauren R. v. Kijakazi*, No. 20-15611, 2023 WL 3884120, at *2 (D.N.J. June 8, 2023) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).  In her decision, the ALJ failed to sufficiently explain how Plaintiff's non-severe impairments affect the RFC determination (to the extent they do at all).  Effectively, Plaintiff's seven non-severe impairments were "screened out of the analysis at step two.  As a result, the potential effect of those impairments, alone or in combination with each other and the [other] impairments, was not analyzed at step three or subsequently."  *Melendez v. Colvin*, No. 15-3209, 2016 WL 4718946, at *4 (D.N.J. Sept. 8, 2016).  It necessarily follows that the ALJ's errors at step two were not harmless, as there is no substantive explanation of how the non-severe impairments played into the ALJ's determination of Plaintiff's RFC.  *Taylor v. Comm'r of Soc. Sec.*, 2018 WL 2298358, at *8

In *Scott S.*, Judge Esther Salas, U.S.D.J., faced a nearly identical situation.   2024 WL 3665803, at *5.  There, the ALJ—when determining the plaintiff's RFC—did not consider the medical impairments previously found at step two to be non-severe beyond a conclusory statement similar to the one made by the ALJ here.  *Id.*  Finding the ALJ's analysis insufficient, Judge Salas explained:

13

> [t]he ALJ noted that "the undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing his residual functional capacity." But, as [p]laintiff correctly notes, **there is no written consideration of [p]laintiff's non-severe impairments in the RFC analysis.** A review of the ALJ's RFC analysis at step four—including discussions of [p]laintiff's own testimony, objective medical evidence, and opinion evidence—reveals the ALJ's consideration of only [p]laintiff's severe impairments. . . . But notably absent from the ALJ's RFC analysis is any discussion of [p]laintiff's non-severe impairments. . . . **Accordingly, even though the ALJ indicated that all of [p]laintiff's medically determinable impairments, including those that were not severe, were considered when assessing the RFC, it is unclear based on the ALJ's discussion at step four whether the ALJ did in fact fully consider the limitations and restrictions imposed by all of Plaintiff's impairments, including those that were found to be non-severe, in determining the RFC.**

*Id.* (emphasis added) (citation modified).

Along these lines, courts in this District have explicitly found that "it is insufficient for the ALJ to state that he 'considered all symptoms and ma[k]e passing reference to the medical evidence'" if the ALJ did not "specifically consider or address the impact" of those impairments on the plaintiff's ability to work. *Maria A. v. Comm'r of Soc. Sec.*, No. 23-2484, 2024 WL 943466, at *6 (D.N.J. Mar. 5, 2024) (quoting *Curry v. Comm'r of Soc. Sec.*, No. 15-7515, 2017 WL 825196, at *5 (D.N.J. Mar. 2, 2017)). For instance, in *Curry*, the Court remanded the case back to the ALJ because "[a]fter determining that [the plaintiff]'s mental impairments were not 'severe' at step two, the ALJ did not mention [the plaintiff]'s mental impairments for the remainder of her [RFC] assessment. . . ." 2017 WL 825196, at *5 (citation modified).

Here, too, the ALJ failed to articulate any explanation as to how Plaintiff's non-severe impairments affect her RFC. For example, it is unclear whether or how Plaintiff's rheumatoid arthritis affects her ability to perform light work. Nor has the ALJ explained how someone who cannot stand for more than twenty minutes at a time and whose doctor recommended she avoid prolonged standing can perform unskilled light work, which can "require[] a good deal of walking or standing." 20 C.F.R. § 404.1567(b).

14

The failure to adequately consider Plaintiff's non-severe impairments is also evident from the tension between Plaintiff's symptoms from those impairments and the requirements for unskilled light work jobs. At the Hearing, the vocational expert testified that the jobs which Plaintiff could work in the unskilled light work category only allowed for six to eight absences per year. R. 86. But as Plaintiff persuasively points out, the "uncontradicted record" demonstrates that Plaintiff needs to be absent far in excess of six to eight absences a year. Br. at 31. Plaintiff's infusion therapy for her rheumatoid arthritis—which takes place every six weeks—alone requires her to take at least eight absences per year. *Id.* Thus, just from this one impairment, Plaintiff is already at or over the permissible limit of annual absences. The ALJ's determination that Plaintiff can work these jobs fails on those grounds alone, and that is before considering Plaintiff's other medical commitments, including "nerve block and radiofrequency ablation and trigger point injection surgeries," physical therapy, doctor's appointments, days she cannot work when her symptoms flare up, and more, which will inevitably lead to several more absences. *Id.*

"In evaluating all the evidence before them, including evidence on non-severe impairments, an ALJ may weigh the credibility of the evidence, but they must give some indication of the evidence they reject and the reason(s) for discounting such evidence." *Lucas v. Bisignano*, No. 25-344, 2026 WL 560360, at *4 (M.D. Pa. Feb. 27, 2026). Despite the ALJ's statement that she considered Plaintiff's non-severe impairments when crafting her RFC, the Administrative Record suggests otherwise.

Defendant does not meaningfully dispute any of these assertions. Instead, Defendant reframes Plaintiff's argument as a request for the Court to "re-weigh the evidence that led the ALJ to conclude that her impairments did not create disabling functional limitations, and reach a different conclusion." Opp'n at 6. Defendant further asserts that Plaintiff seeks to "discredit the

15

rationale" of the ALJ's decision. *Id.* The Court disagrees with Defendant's characterization of Plaintiff's Brief. Plaintiff is not asking the Court to re-weigh the medical evidence or discredit the ALJ's determinations, but to consider whether the ALJ has sufficiently provided an explanation for her reasoning. Here, the ALJ did not provide any explicit rationale for how Plaintiff's non-severe impairments—which undisputedly caused Plaintiff numerous physical and mental symptoms—affect her ability to perform unskilled light work. Defendant offers no argument to the contrary, and in fact, fails to acknowledge *any* of Plaintiff's non-severe medical impairments in Opposition.

"Where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration." *Brandt v. Kijakazi*, No. 22-197, 2023 WL 2578253, at *5-6 (M.D. Pa. Mar. 20, 2023) (reversing and remanding the ALJ's decision because, in contrast to the ALJ's indication that all of the plaintiff's medically determinable impairments were considered, the ALJ failed to mention at least one of the plaintiff's non-severe impairments at step four); *see also Fitzpatrick v. Comm'r of Soc. Sec.*, No. 19-7608, 2020 WL 1872978, at *4-5 (D.N.J. Apr. 15, 2020) (reversing and remanding the ALJ's decision for further proceedings because, after the ALJ determined that Plaintiff's mental impairments were not severe at step two, the ALJ "did not mention Plaintiff's mental impairments for the remainder of her assessment of Plaintiff's RFC"). The Court's conclusion that it must vacate the ALJ's decision is not a procedural one. Ultimately, the ALJ's "omission" of any analysis of how Plaintiff's seven non-severe medical impairments were considered when determining Plaintiff's RFC "is not harmless, as Plaintiff's physical impairments could affect her RFC, which could in turn affect which, if any, jobs exist that Plaintiff could perform." *K.P.*, 2021

WL 3130879, at *5.  As demonstrated above, it is quite possible that a consideration of Plaintiff's rheumatoid arthritis alone may render Plaintiff unable to perform unskilled light work.

In sum,

> a boilerplate statement . . . that the ensuing RFC assessment "reflects" the limitations determined at step two, with no further discussion of those limitations . . . is not the "valid explanation" required by Third Circuit case law or the "detailed assessment" required by SSR 96-8p.  *See* [*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 213-14 (3d Cir. 2019)]; [*Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004)]; SSR 96-8p, 1996 WL 374184, at *5.  It is inconsistent with regulations requiring the ALJ when formulating the RFC to "consider" *all* impairments, even non-severe ones, and at odds with the only circuit-level decision addressing the viability of such a statement.  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); [*Wells v. Colvin*, 727 F.3d 1061, 1068-71 (10th Cir. 2013)].

*Gunn v. Kijakazi*, 705 F. Supp. 3d 315, 333 (E.D. Pa. 2023).  Accordingly, the Court will **GRANT** Plaintiff's appeal, **VACATE** the denial, and **REMAND** for further proceedings.  On remand, the ALJ should first reconsider whether any of Plaintiff's non-severe impairments are in fact severe, and then explicitly articulate whether and how all of Plaintiff's medical impairments (both severe and non-severe) potentially impact Plaintiff's RFC, and in turn, whether Plaintiff can perform any of the jobs identified by the vocational expert.

## C.    The Court Will Not Remand for Benefits

Plaintiff asserts that the proper remedy is for the Court to remand solely to calculate benefits.  Reply at 4.  In making the determination whether to remand for further proceedings or solely for the ALJ to calculate benefits, the Court considers two factors:  (1) whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and (2) whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  *Bieri v. O'Malley*, No. 23-1919, 2024 WL 4680672, at *6 (M.D. Pa. Nov. 5, 2024) (citations omitted).

17

While the Court may "affirm, modify[,] *or* reverse the Commissioner's decision," 42 U.S.C. § 1383(c)(1)(A); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991), Third Circuit precedent directs that court-awarded benefits should be limited to circumstances where "the administrative record . . . has been fully developed and when substantial evidence as a whole indicates that the claimant is disabled and entitled to benefits." *Morales*, 225 F.3d at 320.

As explained in *Scott S.*:

> Here, because the Court finds that the ALJ did not adequately consider Plaintiff's non-severe impairments during the RFC calculation, the proper remedy is to remand for further development of the record. *See Brandt*, 2023 WL 2578253, at *7. On remand, the ALJ is instructed to conduct additional investigations into, and provide explanations of, how if at all Plaintiff's non-severe impairments may affect the RFC calculation.

2024 WL 3665803, at *6.  This Court will follow suit and remand the action to the ALJ to provide explanations as to whether and how Plaintiff's non-severe medical impairments affect her RFC.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's appeal will be **GRANTED**, the ALJ's denial of benefits will be **VACATED**, and the matter will be **REMANDED** to the SSA for further proceedings consistent with this Opinion.  An appropriate Order follows.

Dated: June 4, 2026

Evelyn Padin, U.S.D.J.

18